**Dante BERTANI, Plaintiff,**

v.

**WESTMORLAND COUNTY, PENNSYLVANIA, Charles Anderson, Commissioner, in his individual capacity, and Tyler Courtney, Commissioner, in his individual capacity, Defendants.**

2:12cv1359

United States District Court, W.D. Pennsylvania.

Signed August 11, 2014

Samuel J. Cordes, Samuel J. Cordes & Associates, John E. Black, III, Pittsburgh, PA, for Plaintiff.

Thomas P. Pellis, John M. Scales, Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C., Greensburg, PA, for Defendants.

## MEMORANDUM ORDER

David Stewart Cercone, United States District Judge

Plaintiff, Dante Bertani ("Bertani" or "Plaintiff"), filed an Amended Complaint alleging that he was discharged from his position as the Westmoreland County Public Defender by Defendants, Westmoreland County (the "County"), Commissioner Charles Anderson ("Anderson"), and Commissioner Tyler Courtney ("Courtney") (collectively "Defendants"), in violation of his right to free association under the First and Fourteenth Amendment of the U.S. Constitution and 42 U.S.C. § 1983, and in violation of his rights under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (the "ADEA"). Before the Court are Defendants' Motion for Summary Judgment and Motion to Strike Concise Statement of Material Facts, and Bertani's Motion for Leave to File Second Amended Complaint.

### A. Motion to Strike

■ Defendants ask this Court to strike Bertani's Statement of Material Facts Precluding Summary Judgment. Defendants contend that such statement, made in addition to Bertani's Response to Defendants' Concise Statement of Material Facts, is not permitted by either the Federal Rules of Civil Procedure or the Western District's Local Rules of Civil Procedure, and is an "unauthorized supplemental brief in opposition to summary judgment."

Under this District's Local Rules, a party opposing a motion for summary judgment must file:

A separately filed concise statement, which responds to each numbered paragraph in the moving party's Concise Statement of Material Facts by:

a. admitting or denying whether each fact contained in the moving party's Concise Statement of Material Facts is undisputed and/or material;

b. setting forth the basis for the denial is any fact in the moving party's Concise Statement of Material Facts is not admitted in its entirety (as to whether it is undisputed or material) with appropriate reference to the record . . . ; and

c. setting forth in **separately numbered paragraphs any other material facts that are allegedly at issue**, and/or that the opposing party asserts are necessary for the Court to determine the motion for summary judgment[.]

*See* LCvR 56(C)(1)(emphasis added). Here, Bertani filed a Response to Defendants' Concise Statement of Material Facts in which he responded to each numbered paragraph indicating whether such fact was disputed and/or material, then filed a separate Concise Statement, in separately numbered paragraphs, setting forth additional facts he felt were material and necessary. Though the Local Rules contemplated one document, Bertani's use of two (2) separate filings is not a material breach that would cause this Court to strike his Statement of Material Facts Precluding Summary Judgment.

Accordingly, Defendant's Motion to Strike will be denied.

### B. Motion for Summary Judgment

Republican Commissioners Anderson and Courtney were elected to the office of the Westmoreland County Board of Commissioners (the "Board") in November 2011, and sworn in January of 2012. Defen-

dants' Concise Statement of Material Facts ("Def. CSMF") ¶ 39. The Republican Party, therefore, held the majority on the Board for the first time in more than fifty-five (55) years. Plaintiff's Statement of Material Facts ("PL. SMF") ¶ 2. Bertani was the chair of the Westmoreland Democratic Committee since 2006, and was the chair during the 2011 elections. Pl. SMF ¶ 20. Bertani, who is eighty-one (81) years of age, began his tenure as Chief Public Defender in 1969. Pl. SMF ¶ 12.

On January 20, 2012, Anderson asked Bertani if he had thought about retiring. Pl. SMF ¶¶ 34–41. Bertani informed Anderson that he did not plan to retire. Pl. SMF ¶¶ 42–43. In February, Anderson again spoke with Bertani and asked him if he gave any more thought to retiring. Pl. SMF ¶ 46. In the first week of March, 2012, Anderson asked Bertani for the third time if he planned to retire. Pl. SMF ¶ 48. Even though Bertani once again indicated he did not plan to retire, Anderson said he wanted an answer by the end of March. Pl. SMF ¶¶ 49 & 50. During the March meeting, Anderson told Bertani that the GOP Commissioners had lost confidence in him. Pl. SMF ¶ 53. Anderson, however, was unable to tell Bertani the basis for the Board's loss of confidence in him. Pl. SMF ¶¶ 55–57.

On or about March 20, 2012, Anderson's Administrative Assistant Matthew Junker ("Junker") paid a visit to Bertani. Pl. SMF ¶ 61. With Junker was Wayne McGrew ("McGrew"), the person the Defendants had chosen as the new Public Defender while Bertani was on vacation. Id. With McGrew standing there, Junker told Bertani that the Board was discharging him from his position of Public Defender at the end of the month, and replacing him with McGrew. Pl. SMF ¶ 63. After Bertani's termination, Anderson told the local newspaper that Bertani had served the people of Westmoreland County well, but "it's a new day and a new regime." Pl. SMF ¶ 71.

Bertani contends he was discharged from his position as Westmoreland County Public Defender in violation of his right to free association under the First and Fourteenth Amendments, and in violation of his rights under the ADEA. Defendants, however, now contend that Bertani was fired because of: (1) unpaid real estate taxes reported in the mid to late 1990's (Def. CSMF ¶¶ 9 & 10); (2) a 1996 dispute with the district magistrates (Def. CSMF ¶¶ 5–7); (3) a minor accident with Courtney's parked car that occurred in 2011 when Bertani was parallel parking on a Greensburg street (Def. CSMF ¶¶ 30–38; Pl. SMF ¶¶ 115–169); (4) rumors that he was habitually late for court (Def. CSMF ¶ 4); and (5) an old newspaper article in which Judge McCormick, during a heated hearing, expressed displeasure with Bertani (Pl. SMF ¶ 98).

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment shall be granted when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. To support denial of summary judgment, an issue of fact in dispute must be both genuine and material, i.e., one upon which a reasonable fact finder could base a verdict for the non-moving party and one which is essential to establishing the claim. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Id.* The court's consideration of the facts must be in the light most favorable to the party opposing summary judgment and all rea-

sonable inferences from the facts must be drawn in favor of that party as well. *Whiteland Woods, L.P. v. Township of West Whiteland*, 193 F.3d 177, 180 (3d Cir. 1999), *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987).

When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P 56(e). Further, the nonmoving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The non-moving party must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n. 3 (3d Cir. 1998), (*quoting Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994)).

### 1. Political Affiliation

In *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), and *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), the Supreme Court clarified the constitutional constraints regarding political patronage, holding that termination of public employees because of their political affiliation violates the First Amendment unless the position at issue involves policymaking. *See Elrod v. Burns*, 427 U.S. at 359, 373, 96 S.Ct. 2673 (concluding that conditioning

public employment on support for the political party in power "unquestionably inhibits protected belief and association"); *Branti v. Finkel*, 445 U.S. at 513–17, 100 S.Ct. 1287. In general, "an employee's exercise of First Amendment rights outweighs the government's interest in maintaining a system of political patronage." *Stephens v. Kerrigan*, 122 F.3d 171, 176 (3d Cir. 1997)(citations omitted).

In order to establish a *prima facie* case of discrimination based on political patronage in violation of the First Amendment, Bertani must show that (1) he was employed at a public agency in a position that does not require political affiliation, (2) he was engaged in constitutionally protected conduct, and (3) this conduct was a substantial or motivating factor in the Defendants' employment decision. *See, e.g., Stephens v. Kerrigan*, 122 F.3d at 176. Upon such a showing, the burden then shifts to the Defendants to show "by a preponderance of the evidence that the same employment action would have been taken even in the absence of the protected activity." *Smith v. City of Allentown*, 589 F.3d 684, 692–693 (3d Cir. 2009) (quoting *Galli v. N.J. Meadowlands Comm'n*, 490 F.3d 265, 271 (3d Cir. 2007)).

There is no dispute in this instance that Bertani meets the first two prongs of the test required to establish a *prima facie* case of discrimination based on political patronage. Further, the Court finds that Bertani has established that Defendants knew Bertani was affiliated with the Westmoreland County Democratic Party, and if fact, supported the candidates that ran against both Anderson and Courtney. Therefore, this Court must look at the second component of the "substantial or motivating factor" prong for political patronage discrimination cases which is causation. To establish causation, Bertani must produce sufficient evidence from

which a reasonable jury could conclude that his political affiliation was a "substantial or motivating factor" in the adverse employment action. *See Galli v. N.J. Meadowlands Comm'n*, 490 F.3d at 276.

■ In the context of First Amendment retaliation claims:

> To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. In the absence of that proof the plaintiff must show that from the evidence gleaned from the record as a whole the trier of the fact should infer causation.

*Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007); *see also Vaticano v. Twp. of Edison*, 514 Fed.Appx. 218, 225 (3d Cir. 2013).

■ The Court has little difficulty finding that sufficient evidence supporting Bertani's contention that his political affiliation was a substantial or motivating factor in his termination based upon:

(1) Bertani was terminated less than three (3) months after Anderson and Courtney took office as majority Commissioners;

(2) Within two (2) weeks of taking office Anderson was seeking Bertani's retirement;

(3) After Bertani's termination, Anderson told the local newspaper that Bertani had served the people of Westmoreland County well, but "it's a new day and a new regime" indicating the Republican majority had its own agenda;

(4) Anderson's unsupported and overly broad contention that the Board had "lost confidence" in Bertani; and

(5) The Defendants' *post hoc* explanations for Bertani's termination that involved incidents which occurred 15 to 20 years prior to the Board's decision to the adverse employment action.

Moreover, for these same reasons, the Court finds material issues of fact exist as to whether the Defendants would have taken the same employment action in the absence of Bertani's strong affiliation with the Westmoreland County Democratic Party.

Accordingly, Defendants' motion for summary judgment must be denied with regard to Bertani's First Amendment political affiliation claim.

### 2. Age Discrimination

Defendants argue that the requirement of "but for" causation as emphasized by the Supreme Court in *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009), bars Bertani's claim under the ADEA. This Court has already found that such contention is misplaced. Specifically, in *Straka v. Comcast Cable*, 897 F.Supp.2d 346 (W.D. Pa. 2012), this Court stated:

> The Court's analysis in *Gross* involved a mixed motives analysis under *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). It explained that unlike a mixed motives case under Title VII where the burden of persuasion shifts to the plaintiff after he or she sufficiently has demonstrated that both permissible and impermissible motives were at play in the decision or action at hand, the ADEA has never been amended to endorse such an approach. [*Gross v. FBL Financial Services, Inc.*, 129 S.Ct.] at 2349. Accordingly, the traditional approach in employment cases mandates that the plaintiff retain the burden of proving causation and persuading the

finder of fact that the illegal criterion was a substantial factor that had a direct impact in the adverse employment action. *Id.* at 2351. To the extent defendant is implying that the Court's use of the phrase "but for" causation should be understood as requiring a showing of sole causation, the contention is misplaced. *See Smith v. City of Allentown,* 589 F.3d 684, 690 (3d Cir. 2009) (reiterating that the burden of persuasion remains with the plaintiff at all times under the *McDonnell Douglas* burden shifting analysis, including the burden of proving "but for" causation) (citing *Starceski v. Westinghouse Elec. Corp.,* 54 F.3d 1089, 1096 n.5 (3d Cir. 1995) ("In *Miller* [*v. CIGNA Corp.,* 47 F.3d 586, 593–94 (3d Cir. 1995)], we rejected the statement in *Griffiths* [*v. CIGNA Corp.,* 988 F.2d 457 (3d Cir. 1993)] that an employee advancing a McDonnell Douglas/Burdine pretext theory must show that invidious discrimination is the 'sole cause' of his employer's adverse action.")).

*Straka v. Comcast Cable,* 897 F.Supp.2d at 356 n.4. Therefore, *Gross* does not preclude Bertani's ADEA claim in this case.

 Under the ADEA, an employer is prohibited from discharging any individual or otherwise discriminating against an individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's age. 29 U.S.C. § 623(a)(1). A plaintiff can sustain a claim of discrimination under the ADEA by presenting either direct or circumstantial evidence of discrimination. *See Duffy v. Paper Magic Group, Inc.,* 265 F.3d 163, 167 (3d Cir. 2001). Because Bertani has not provided direct evidence of discrimination, our inquiry is governed by the three-part framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–803, 93 S.Ct. 1817, 36 L.Ed.2d 668, (1973) (the "McDonnell Douglas analysis"). *See Smith v. City of Allentown,* 589 F.3d 684,

691 (3d Cir. 2009) (reaffirming the use of the McDonnell Douglas analysis in ADEA cases involving indirect evidence).

 Under the McDonnell Douglas analysis, once the employee establishes a *prima facie* case of discrimination, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employer's adverse employment decision. *McDonnell Douglas Corp. v. Green,* 411 U.S. at 802, 93 S.Ct. 1817. If the employer makes that showing, the burden of production shifts once again to the employee to establish that the employer's proffered justification for the adverse action is pretextual. *Tex. Dep't of Comm. Affairs v. Burdine,* 450 U.S. 248, 254–255, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Throughout this burden-shifting exercise, the burden of persuasion remains on the employee. *Starceski v. Westinghouse Elec. Corp.,* 54 F.3d 1089, 1095 n.4 (3d Cir. 1995) (citing *Tex. Dep't of Comm. Affairs v. Burdine,* 450 U.S. at 253, 101 S.Ct. 1089).

 To establish a *prima facie* case, Bertani must demonstrate that: (1) he is a member of the protected class, *i.e.* at least 40 years of age; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) that he was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus. *Smith v. City of Allentown,* 589 F.3d at 689 (citing *Potence v. Hazleton Area Sch. Dist.,* 357 F.3d 366, 370 (3d Cir. 2004). To establish a *prima facie* case at summary judgment, "the evidence must be sufficient to convince a reasonable factfinder to find all of the elements of [the] *prima facie* case." *Duffy v. Paper Magic Grp.,* 265 F.3d 163, 167 (3d Cir. 2001). The evidence of record supports a finding that Bertani can show a *prima facie* case of age discrimination.

The burden now shifts to Defendants to offer a legitimate non-discriminatory reason for terminating Bertani. *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997); *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 644 n. 5 (3d Cir. 1998). This burden is "relatively light" and is satisfied if the employer provides evidence, which, if true, would permit a conclusion that it took the adverse employment action for a non-discriminatory reason. *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994)); *see also Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 302 (3d Cir. 2012) (describing this step as a "minimal burden").

The Court finds sufficient, though barely sufficient, evidence in the record that would permit a conclusion that Defendants' had a nondiscriminatory reason for terminating Bertani. But, as set forth above, this Court has little difficulty finding evidence from which a factfinder could reasonably either (1) disbelieve the articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of Bertani's termination. *See Fuentes v. Perskie*, 32 F.3d at 764. The Court finds material issues of fact from which a factfinder could determine that Defendants' proffered justification for the adverse employment action is pretextual, based upon the following:

(1) Within two (2) weeks of taking office Anderson was seeking Bertani's retirement;

(2) Anderson asked Bertani three (3) times in three (3) months whether he was considering retiring, despite Bertani telling him he wanted to remain as the Public Defender;

(3) Anderson's unsupported and overly broad contention that the Board had "lost confidence" in Bertani; and

(4) The Defendants' *post hoc* explanations for Bertani's termination that involved incidents which occurred 15 to 20 years prior to the Board's decision to the adverse employment action.

Therefore, Defendants' motion for summary on Bertani's ADEA claim must be denied.

## C. Motion for Leave to File Second Amended Complaint

Bertani seeks leave to file a Second Amended Complaint to add a claim for violation of the Pennsylvania Human Rights Act, 43 Pa. Cons. Stat. Ann. § 925 *et seq.* (the "PHRA"), identical to his claim made under the ADEA. Plaintiff's PHRA claim does not raise any novel or complex issues of state law and the state PHRA claim does not predominate over the ADEA claim. Moreover, the same analysis is used for Federal discrimination claims and PHRA claims. *See, e.g., Simpson v. Kay Jewelers*, 142 F.3d at 643–44 & n.4; *Jones v. School District of Philadelphia*, 198 F.3d 403, 410–411 (3d Cir. 1999); *Fairfield Township Volunteer Fire Co. No. 1 v. Commonwealth*, 530 Pa. 441, 609 A.2d 804, 805 (1992). Further, Defendants will not be prejudiced by the addition of the PHRA claim, and amendment of the complaint will not cause any delay or duplication in this case. The Court will, therefore, grant the motion for leave to amend.

Accordingly,

### ORDER OF COURT

AND NOW, upon consideration of Defendants' Motion for Summary Judgment (**Document No. 30**), Plaintiff's response thereto, the briefs and appendices filed in support thereof, in accordance with the accompanying Memorandum,

IT IS HEREBY ORDERED that the Motion for Summary Judgment is **DENIED**.

IT IS FURTHER ORDERED that Defendants' Motion to Strike Concise Statement of Material Facts (**Document No. 44**) is **DENIED**, and Bertani's Motion for Leave to File Second Amended Complaint (**Document No. 34**) is **GRANTED**. Plaintiff shall file his Second Amended Complaint within seven (7) days of the date of this Order.